UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Felishia Williams,

      Plaintiff,

v.                                              Case No. 19-13456

Michigan Department of Health and               Sean F. Cox
Human Services; Michigan Civil                  United States District Court Judge
Service Commission; Kristen Ziegler;
and Diane Heisel,

      Defendant.

_____/

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE A SURREPLY (ECF No. 28) AND DEFENDANTS' MOTIONS TO DISMISS (ECF Nos. 20 and 21)

Acting *pro se*, Plaintiff Felishia Williams has filed Title VII claims against her employer the Michigan Civil Service Commission, the Michigan Department of Health and Human Services, and various state employees. The Defendants have moved to dismiss Williams's claims.[1] For the reasons below, the Court will grant Defendants' motions and dismiss this case with prejudice.

## BACKGROUND

Plaintiff Felisha Williams is employed by the Michigan Civil Service Commission. Am. Compl. ¶ 11. For the past eight years, Williams has been assigned to serve as a human resources representative with the State of Michigan's Center for Forensic Psychiatry, which is operated by

---

[1] In the course of briefing these motions, Williams sought leave to file a surreply. (ECF No. 28) Defendants oppose this motion. (ECF Nos. 30 and 31). After review of Williams's motion and Defendants' responses, the Court **GRANTS** Williams's motion and considers the surreply that she filed on the docket. (ECF No. 29).

the Michigan Department of Health and Human Services ("DHHS"). Am. Compl. ¶ 4, 11. Williams alleges that, during her time at the Center, she was discriminated against because she is African American.

As detailed in Williams's Amended Complaint, this racial discrimination took various forms:

> 15.    The harassment of Plaintiff included, but is not limited to:
>
> a.    Being told by a white co-worker that Plaintiff only received a temporary promotion "because [she] is black;"
>
> b.    Being told by a white co-worker that "Blacks stick together;"
>
> c.    Being told by a white co-worker that the only reason that she received a promotion was because both Plaintiff and the supervisor (who hired Plaintiff) are black;
>
> d.    Being subjected to harassment and rumors that alleged that she was engaged in a romantic relationship with an applicant for a position at [the Center], solely on the basis that both Plaintiff and the applicant are African American;

Am. Compl. ¶ 15.

Williams also alleges that she "was subjected to certain discipline based upon Defendants' improper stereotypes of Plaintiff as an African American woman, and stereotypes about African Americans in general." Am. Comp. ¶ 17. Specifically, "in or about 2017, Plaintiff sent an email to Defendant Heisel," and "Heisel made the false claim that the email was 'threatening and aggressive.'" *Id*. "As a result of the email…[Williams] was discipline for 'not following the chain of command;' other, non-African American females have sent emails of a similar nature and received no discipline." Am. Compl. ¶ 18.

On July 27, 2017, a Center employee threatened to bring his gun to Williams's office if she did not improve a job applicant's compensation package. Am Compl. ¶ 24. This employee "received no discipline" for this threat but an African American employee who made similar threats was disciplined. Am. Compl. ¶ 25-26.

"In or about December 2017, Williams was disciplined by [the DHHS] and the Commission for writing an email using capital letters and an exclamation point; however, non-African American employees on many occasions have sent emails using capital letters and similar punctuation and have received no discipline." Am. Compl. ¶ 19.

This December 2017 email also caused Williams to be "disciplined by [the DHHS] and the Commission for allegedly offending a nurse with the tone and tenor of an email that Plaintiff had sent to multiple people." Am. Compl. ¶ 20. However, "the nurses who received the email confirmed to [Williams] that they were not in the least bit offended by the email." *Id*. "Despite the fact that the nurse was not offended, a representative of [the DHHS] sent a copy of [Williams's] email to [her] supervisors at the Commission's Lansing office." Am. Compl. ¶ 21. Williams alleges that "the representative of [DHHS] who forwarded [her] email…to the Commission's Lansing office was 'not following the chain of command,' but received no discipline." Am. Compl. ¶ 22. This representative is white. *Id*.

On November 22, 2019, Williams filed this *pro se* lawsuit against the State of Michigan, the DHHS, the Commission, and state employees Kristen Ziegler, Diane Heisel, and Lance Bettison.[2] In February 2020, the Defendants filed motions to dismiss. (ECF No. 13 and 16). As is the Court's usual custom, Williams was allowed to amend her complaint in response to these

---

[2] The DHHS, Ziegler, and Heisel, are collectively referred to as "the DHHS Defendants."

motions. (ECF No. 14). Williams took advantage of this opportunity and filed an amended complaint. (ECF No. 18). Williams's amended complaint dropped her claims against the State of Michigan and Lance Bettison, and brought three claims under Title VII of the Civil Rights Act of 1964: (1) racial discrimination; (2) racial harassment under a "hostile work environment" theory; (3) retaliation.

On March 26, 2020, Defendants filed new motions to dismiss. (ECF Nos. 20 and 21). Williams responded, (ECF No. 25), and Defendants replied. (ECF Nos. 26 and 27). Williams filed a surreply. (ECF No. 29).

## ANALYSIS

### I.     Standard

Defendants bring their motions under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  A motion to dismiss brought under Rule 12(b)(1) is a challenge to the Court's subject matter jurisdiction. "Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). "A *facial* attack is a challenge to the sufficiency of the pleading itself." *Id*. (emphasis in original). "A *factual* attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction." *Id*. (emphasis in original). Here, Defendants raise no argument that attacks the factual existence of subject matter jurisdiction. Nor could they; Williams's claims arise under Title VII (a federal statute) and therefore implicate this Court's federal-question jurisdiction. Thus, the Court construes Defendants' Rule 12(b)(1) arguments as facial attacks, challenging the sufficiency of Williams's Amended Complaint.

4

Rule 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted.  The Court must construe the complaint in the light most favorable to the plaintiff and accept its well-pleaded factual allegations as true.  *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  To survive a motion to dismiss, the complaint must offer factual allegations sufficient to make the asserted claims plausible on their face.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Legal conclusions couched as factual allegations will not suffice.  *Rondigo, LLC v. Township of Richmond*, 641 F.3d 673, 670 (6th Cir. 2011).  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## II.    DHHS Defendants' Motion

The DHHS Defendants argue that Williams's Amended Complaint must be dismissed because most of the incidents she complains of occurred more than 300 days before she filed her discrimination charge with the United States Equal Employment Opportunity Commission ("EEOC"). These Defendants also argue that none of Williams's claims satisfy the plausibility standard. Williams responds that her complaints are not time-barred because they satisfy the "continuing violations" doctrine and that her factual allegations establish plausible Title VII claims.

### A.    The 300 Day "Look-Back" Period

"In order to bring a Title VII suit in federal court, a plaintiff must first have filed, within 300 days of the adverse action, a charge of discrimination with the EEOC." *Banerjee v. University of Tennessee*, -- Fed.App'x --, 2020 WL 2485818 at *7 (6th Cir. June 26, 2020). Here, Williams

filed her charge of discrimination on September 20, 2018. (ECF No. 1, PageID 11). Thus, only those incidents that occurred on or after November 25, 2017 are actionable in this Court.

This limitation comes with an important caveat, which Williams refers to as the "continuing violations" doctrine: the 300-day "look back" period only applies to discrete discriminatory and retaliatory acts, not non-discrete hostile work environment acts. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002). In *Morgan*, the Supreme Court clearly articulated this distinction and described how hostile work environment claims should be considered under the 300-day look back period:

> We conclude that a Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts must file his charge within the appropriate time period—180 or 300 days—set forth in 42 U.S.C. § 2000e–5(e)(1). A charge alleging a hostile work environment claim, however, will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period.

*Id*. This principle limits Williams's ability to present discrete incidents of alleged discrimination or retaliation to the Court. To begin, those incidents described in Paragraph 15 of Williams's complaint are discrete incidents that occurred before November 25, 2017.

15.    The harassment of Plaintiff included, but is not limited to:

   a.    Being told by a white co-worker that Plaintiff only received a temporary promotion "because [she] is black;"

   b.    Being told by a white co-worker that "Blacks stick together;"

   c.    Being told by a white co-worker that the only reason that she received a promotion was because both Plaintiff and the supervisor (who hired Plaintiff) are black;

   d.    Being subjected to harassment and rumors that alleged that she was engaged in a romantic relationship with an applicant for a position at [the Center], solely on the basis that both Plaintiff and the applicant are African American;

6

Am. Compl. ¶ 15. Although Williams's Amended Complaint does not include dates related to these incidents, her original Complaint did. *See* Compl. ¶ 24-27 (alleging that the "because [she] is black" and "Blacks stick together" comments occurred in May 2016); ¶ 18, 24-27 (alleging that Ziegler suggested that Williams received a temporary promotion only because she and her supervisor were black, once in 2014 and once in May 2016); ¶ 39 (alleging that, on September 8, 2017, a co-worker accused Williams of having a romantic relationship with a job applicant solely because both she and the applicant are black). And the incident related Williams' email to Heisel, referenced in Paragraph 17 of the Amended Complaint, appears to be the incident described in Paragraphs 31 through 34 of her Complaint. Although her Amended Complaint does not attribute a specific date to this incident (instead only saying that it occurred "in or around 2017"), her original complaint included a date of September 13, 2017. Compl. ¶ 33.

The DHHS Defendants raised this timing challenge in their first motion to dismiss. In response, Williams appears to have deleted the out-of-time dates and refiled her Complaint. The Court will not allow Williams to sidestep a valid timeliness challenge by making her Complaint *vaguer*. Accordingly, the Court finds that, as pleaded, the incidents described in Paragraphs 15 and 17 of Williams's Amended Complaint cannot be considered in relation to her discrimination and retaliation claims (Counts I and II) because they did not occur within 300 days of her charge.

Further, the incident related to the gun threat occurred on July 27, 2017. Am. Compl. ¶ 24. Thus, this incident is also outside the 300-day window and cannot be considered in relation to the discrimination or retaliation claim.

However, so long as one other incident described in her Amended Complaint occurred within the 300-day window, these incidents may be considered as part of her hostile work environment claim (Count II).

The incident described in Paragraphs 19 and 20 of the Amended Complaint (which describe reactions to Williams's December 2017 email) may be considered as part of Williams' discrimination and retaliation claims because they occurred after November 25, 2017.

### B.    Count I: Discrimination

Count I raises a claim of racial discrimination in violation of Title VII. To establish a *prima facie* claim of discrimination, Williams must allege that (1) she is a member of a protected class; (2) she was qualified for the job; (3) she suffered an adverse employment action; and (4) she was treated differently than similarly situated employees outside of her protected class. *White v. Baxter Healthcare Corp*., 533 F.3d 381, 391 (6th Cir.2008). The third element—an adverse employment action—requires "a materially adverse change in the terms and conditions of [a plaintiff's] employment." *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 795 (6th Cir.2004) (en banc) (citation omitted). Adverse employment actions are typically marked by a "significant change in employment status," including "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id*. at 798 (quoting *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998)). *De minis* consequences, such as a "bruised ego" or a "mere inconvenience or an alteration of job responsibilities," do not constitute an adverse employment action. *Id*. at 797.

Given the Court's conclusions regarding which alleged discriminatory incidents are properly before it, only Williams's allegations regarding the December 2017 email can be

considered in this Count. In her Amended Complaint, Williams's allegations regarding this incident are sparse and conclusory:

> 20.     In or about December 2017, Plaintiff was disciplined by MDHHS and the Commission for writing an email using capital letters and an exclamation point; however, non-African American employees on many occasions have sent emails using capital letters and similar punctuation and have received no discipline.
>
> 21.     In or about December 2017, Plaintiff was disciplined by MDHHS and the Commission for allegedly offending a nurse with the tone and tenor of an email that Plaintiff had sent to multiple people; the nurses who received the email confirmed to Plaintiff that they were not in the least bit offended by the email.
>
> 22.     Despite the fact that the nurse was not offended, a representative of MDHHS sent a copy of Plaintiff's email to Plaintiff's supervisors at the Commission's Lansing office.
>
> 23.     The representative of MDHHS who forwarded Plaintiff's email referenced above to the Commission's Lansing office was "not following the chain of command," but received no discipline; when Plaintiff allegedly did "not follow the chain of command," she was disciplined. This MDHHS representative is white.

Am. Compl. ¶ 20-23. Aside from vague references to "discipline," Williams makes no allegations regarding any adverse employment actions that she suffered. Based on Williams' Complaint and Amended Complaint, it appears that the only response to this email incident was a "verbal warning," Compl. ¶ 47, and the forwarding of the email to her supervisors at the Commission. Am. Compl. ¶ 23. However, a verbal warning, without any corresponding detrimental effect on pay or

career prospects, is not an adverse employment action under Title VII. *Finley v. City of Trotwood*, 503 Fed.App'x 449, 454 (6th Cir. 2012) (citing *Taylor v. H.B. Fuller Co*., 2008 WL 4647690, at *8–9 (S.D.Ohio Oct. 20, 2008)). And the forwarding of an email to Williams's superiors at the Commission cannot be plausibly understood to be a materially adverse change in the terms and conditions of her employment. As alleged, any negative consequence felt by Williams after her email was forwarded is a harm much more akin to a "bruised ego," *White*, 364 F.3d at 797 (describing *de minis*, unactionable consequences) than to a "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id*. at 795.

In other words, Williams's complaint is devoid of any factual allegation upon which the Court could conclude that she suffered an adverse employment action for the only allegedly discriminatory action properly before it. Thus, she has failed to plead an essential element of her discrimination claim and dismissal of this claim is appropriate.

### C.    Count II: Hostile Work Environment Claim

Count II raises a hostile work environment claim. To establish a hostile work environment claim, Williams must plead that (1) she is a member of a protected class; (2) she was subject to unwelcomed harassment; (3) the harassment was based on her race; (4) the harassment created a hostile work environment; and (5) the employer failed to take reasonable care to prevent and correct any harassing behavior. *Russell v. University of Toledo*, 537 F.3d 596, 608 (6th Cir. 2008). A hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Williams v. Gen. Motors*

*Corp.*, 187 F.3d 553, 560 (alteration in original) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "But conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714, 717 (6th Cir.2012) (internal quotation marks omitted) (quoting *Harris*, 510 U.S. at 21). Thus, to be sufficiently "severe or pervasive," (1) the conduct must be enough to create an environment that a reasonable person would find hostile or abusive, and (2) a plaintiff must subjectively regard the environment as abusive. *Stanley v. Cent. Ky. Cmty. Action Council, Inc.*, 2013 WL 3280264 at *4 (W.D.Ky. 2013) (citing *Harris*, 510 U.S. at 21). Whether an environment is hostile or abusive can be determined only by looking at the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23, 114 S.Ct. 367.

Here, Williams alleges that she has been subjected to a hostile work environment based on the following incidents: (1) in May 2016, being told by a co-worker that she received a temporary promotion "because she is black" and because "blacks stick together;" (2) once in 2014 and once in May 2016, a co-worker told her that she received her promotion only because both she and her supervisor were African American; (3) in September 2017, a co-worker accused her of having a romantic relationship with a job applicant solely because both she and the applicant were African American; (4) in July 2017, a co-worker threatened her with a gun and her employer did not discipline that employee; (5) in September 2017, one of her supervisors accused her of sending a

11

threatening email; (6) in December 2017, a co-worker accused her of sending an "offensive" email and forwarded this email to the Commission.

In sum, Williams has alleged roughly six incidents that occurred over the course of three years. And, as alleged, most of these incidents—such as the comments regarding Williams's promotion—are "occasional offensive utterances," which "do not rise to the level required to create a hostile work environment." *Grace v. USCAR*, 521 F.3d 655, 679 (6th Cir.2008). As for the other incidents, they cannot be plausibly understood as "physically threatening[3] or humiliating," and there is no allegation that any of the complained-of incidents unreasonably interfered with Williams's work performance. Williams's factual allegations do not describe "a workplace [that] is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [Williams] employment and create an abusive working environment." *Williams*, 187 F.3d at 560. Instead, Williams describes several incidents of insensitive comments and a few reactions that she believes were motivated by racial beliefs. While this may not be an ideal workplace, these alleged circumstances are not actionable under Title VII. "To hold otherwise would risk changing Title VII into a code of workplace civility[.]" *Grace*, 521 F.3d at 679.

---

[3] To be sure, Williams alleges that a co-worker threatened her with a gun. But she does not allege that the employee threatened her *because of her race*. If she had, that severe physical threat may have been enough to sustain a hostile work environment claim. Instead, she alleges that the employee threatened her because she did not or could not improve a job applicant's compensation package. As to racial discrimination, she only alleges that this employee was not disciplined for his threat while an African-American employee who made similar threats was. While the employee's threat is undoubtedly serious and troubling, there is no indication that it is actionable under Title VII.

### D.      Count III: Retaliation

In Count III, Williams raises a claim of retaliation under Title VII. To establish a plausible claim of retaliation, Williams must plead that (1) she engaged in a protected activity under Title VII, (2) the exercise of protected rights was known to the Defendants, (3) Defendants took adverse employment action against Williams, and (4) there was a causal connection between the adverse employment action and the protected activity. *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 995-96 (6th Cir. 2009).

Williams' factual allegations regarding retaliation are vague and conclusory. Am. Compl. ¶ 46-52. She alleges that she was subjected to adverse employment because she complained of discrimination and harassment. Am. Compl. ¶ 50-51. These are legal conclusions, which do not suffice for a motion to dismiss. *Rondigo*, 641 F.3d at 670. Further, she provides no factual detail as to the substance of her complaints, who she complained to, or what the resulting adverse employment actions were. As alleged, the Court is unable to discern whether Williams engaged in protected activity, whether the exercise of these protected rights was known to the Defendants, whether Defendants took adverse employment actions against Williams, or whether any adverse employment actions were caused by the protected activity. Williams has failed to adequately plead any element of this claim.

Moreover, Williams' response to the Defendants motion argues that this claim is grounded on retaliation stemming from her filing an EEOC charge. (ECF No. 25). Although this filing is protected activity under Title VII, the factual allegations of her Amended Complaint make no mention of the EEOC charge, or any retaliation caused by it. Thus, as to Williams's retaliation complaint, the EEOC charge is beyond the scope of this lawsuit.

Williams has failed to allege a plausible claim of retaliation and this claim will be dismissed.

### III.     Civil Service Commission's Motion

The Civil Service Commission joined the DHHS Defendant's motion and also argued that it must be dismissed from this case because Williams "fails to specifically allege how the Commission was involved in any of the factual allegations underlying her complaint." (ECF No. 21, PageID 179). While the Court's analysis above applies with equal force to the Commission, this motion articulates a ground that provides an independently sufficient reason for dismissal of most of the defendants: Williams's Amended Complaint does not specifically allege what they did to violate Title VII.[4] Particularly, Defendants Zeigler and Heisel are barely mentioned in the Amended Complaint, and Williams does not even allege that they are her "employer" under Title VII. *See* Am. Compl. ¶ 30. And, outside its role as Williams's nominal employer, the Commission is not alleged to have done anything. Thus, Williams has not alleged plausible Title VII claims against these defendants.

In response to the motions to dismiss, Williams states that the Commission is included as a defendant "due to their failure to fully investigate allegations of harassment and retaliation, looked the other way and thus, implicitly encouraged such unlawful behavior. (ECF No. 25, PageID 195). However, Williams's Amended Complaint contains no factual allegation that would support the conclusion that the Commission had any knowledge of the allegedly discriminatory

---

[4] The DHHS Defendants also raised a form of this argument in their motion. (ECF No. 20, PageID 159-160).

incidents. For example, Williams has not alleged that she ever reported these incidents to the Commission. Thus, any "failure-to-investigate" claim is outside the purview of this lawsuit.

## CONCLUSION

For the reasons above, the Court **GRANTS** the Motion for Leave to File a Surreply (ECF No. 28) and the Defendants' Motions to Dismiss (ECF Nos. 20 and 21), and **DISMISSES** this case **WITH PREJUDICE**.

**IT IS SO ORDERED.**

<u>s/Sean F. Cox</u>
Sean F. Cox
United States District Judge

Dated:  July 20, 2020

15